FILED 4/22/2002 11:58:12 AM, USDC, Southern District of Iowa

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
(Western Division)

| | |
|---|---|
| **Donovan Skarin** and **Ruby Skarin**, minor children, by and through their mother and next friend, Christine Skarin and by and through their father and next friend, Donald Skarin; **Christine Skarin**, individually as a parent and taxpayer, and **Donald Skarin** individually as a parent and taxpayer,<br><br>Petitioners,<br><br>vs.<br>**Woodbine Community School District** and **Board of Education for Woodbine Community School District**<br>Respondents. | NO. 1-02-CV-80010 |

**PETITIONERS' MEMORANDUM IN SUPPORT OF REQUEST FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUCTION**

C O N T E N T S

**I. Factual Allegations** ........................................................................................................3

**II. There Is A Strong Probability That Petitioners Will Be Successful In A Trial On The Merits Of This Case.**........................................................................................ 5

    A. The Inclusion Of The Lord's Prayer And The Requirement That The Choir Students Sing The Prayer At The WHS Graduation Does Not Pass *The Lemon Test.* ........................................................................................... 6

        1.    The Board's Policy On The Lord's Prayer Has No Secular Purpose. .............6

        2.    The Principal Or Primary Effect Of Including The Lord's Prayer And Requiring The Choir Students To Perform It In The Graduation Ceremony Is To Advance Certain Religions And Inhibit Others. ...............11

        3.    The Inclusion Of The Lord's Prayer And The Requirement That The Choir Students Perform It In The Graduation Fosters An Excessive Government Entanglement With Religion. ...................................................12

    B. Inclusion Of The Lord's Prayer And Requiring Choir Students To Perform The Prayer In The Graduation At WHS Does Not Pass The Endorsement Test. ........................................................................................................................14

    C. Inclusion Of The Lord's Prayer And Requiring Choir Students To Perform The Prayer In The Graduation At WHS Does Not Pass The Coercion Test. ..........16

    D. Inclusion Of The Lord's Prayer And Requiring Choir Students To Perform The Prayer In The Graduation At WHS Violates The Iowa Constitution. ....................20

**III. Petitioners Will Suffer Irreparable Injury If The Injunction Is Not Granted.** 21

**V. The Public Interest Is Best Served By Granting This Preliminary Injunction.** ...........22

**Conclusion** ............................................................................................................ 22

INTRODUCTION

Petitioners, by and through their counsel, have requested that this Court grant a temporary restraining order and/or preliminary injunction against the Respondents pursuant to Federal Rule of Civil Procedure 65.  The granting of preliminary relief is within the discretion of this Court.  See  Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 n.8 (8th Cir. 1981).  When determining whether to issue a preliminary injunction, this Court should consider the likelihood of the Petitioners succeeding on the merits, the threat of irreparable harm to the Petitioners if the injunction is not granted, the injury the injunction would inflict on the Respondents, and the public interest.  See id. at 113.  None of these factors to be considered are determinative on their own, and the probability of success on the merits needs to be examined relative to the injuries to the parties and the public.  Id.

The case at bar certainly warrants the issuance of a temporary restraining order or a preliminary injunction by this Court because of the egregious nature of the violation involved.  Applying the Dataphase factors, it appears that the Petitioners will succeed on the merits, there will be irreparable harm to the Petitioners if the injunction is not granted, there will be little or no harm to the Respondents if the injunction is granted, and the public interest demands that the Respondents be enjoined from their alleged conduct.  See id.

## I.      Factual Allegations

The facts of this case are simple, but compelling:  As alleged in their Complaint, the Petitioners in this case are fourteen-year-old twins Ruby and Donovan Skarin along with their parents, Donald and Christine Skarin.  Donovan and Ruby are sophomores at Woodbine High School ("WHS") where they participate in the choir for graded academic credit.  The Skarins filed this action to protect their rights to be free from government-sponsored religion under the First Amendment and Article I, § 3 of the Iowa Constitution. The Respondents in this case are the Woodbine Community School District ("the District") and the Board of Education for Woodbine Community School District ("the Board").  Each are public governmental entities.  School officials, including Superintendent Terry Hazard, control and plan the format of the graduation exercises for WHS, including overseeing and implementing the policies of the Board.

Graduation exercises at WHS are typical of those held in other communities where graduates, their parents, family, friends, other students and community members will attend the ceremony.  The motivation and pressure upon parents and students to attend the graduation ceremony is compelling. Prayer has been included in past years at WHS graduation ceremonies.  On May 19, 2002, WHS will hold its graduation ceremony, and this year it will include the Lord's Prayer in the form of a song performed by the WHS choir, of which Donovan and Ruby Skarin are members.  Donovan and Ruby will be required to perform the Lord's Prayer at the graduation ceremony as part of the choir.  Donovan and Ruby, along with their parents, do not wish to be subjected to this requirement and would like to be free from school-sponsored prayer this year and in the future, as they plan on attending their own graduation in 2004.

Donald and Christine Skarin object to their children being required to sing the Lord's Prayer, as well as to the inclusion of the Lord's Prayer at the graduation ceremony this year and in future years.  The Skarin's believe that the singing of the Lord's Prayer sends a message endorsing the Christian religion by the government.

The inclusion of the Lord's Prayer at the WHS graduation ceremony has no secular purpose, and in fact is intended to advance the views of the Christian religion.  As the Affidavit of Patricia Skarin indicates, the Board discussed the singing of the Lord's Prayer at graduation on the suggestion that it be sung because a majority of the community is Christian.  Skarin Aff. ¶ 4(b).  Upon the mention that the singing of the Lord's Prayer might be unconstitutional at the graduation ceremony, the Board determined to add another non-religious song to make the Lord's Prayer constitutionally permissible.  Skarin Aff. ¶ 4(c).  When the Principal of WHS advised that the District's lawyer had advised against singing the Lord's Prayer, the president of the Board stated, "Lawyers be damned.  Let's do it anyway.  The Lord's Prayer will be sung at graduation." Skarin Aff. ¶ 4(f-g).

The Board has also made their religious intent known since the filing of this suit. On April 3, 2002, the *Des Moines Register* reported that Superintendent Terry Hazard had informed the *Register* that the Lord's Prayer had been sung for several years at WHS graduations, and when the Board considered ending the tradition complaints from residents ensued.  Frank Santiago, <u>Lord's Prayer Plan Sparks Suit</u>, Des Moines Register (April 3, 2002).  The Register reported that the Board "had decided to add a nonreligious song 'to balance things out'" and it thought the addition of the nonreligious song would quiet the critics.  <u>Id.</u> (quoting Terry Hazard).

4

II.     **There Is A Strong Probability That Petitioners Will Be Successful In A Trial On The Merits Of This Case.**

This Court need not find that there is greater than a fifty percent likelihood that the Petitioners will succeed on the merits in order to find a probability that there will be success on the merits. See Dataphase, 640 F.2d at 113.  "[T]he question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  Id.  Courts need to take a flexible approach in determining the probability of success on the merits, one which takes into consideration the circumstances of each case.  See id.

The complaint alleges that the inclusion of the Lord's Prayer in public school graduation ceremonies and requiring the choir students of the school to participate in the singing of the Lord's Prayer at the ceremony violates the First Amendment of the United States Constitution as well as Article I, § 3 of the Iowa Constitution.  The United States Supreme Court has in the past found the inclusion of prayer in public school graduation ceremonies to be unconstitutional, as well as holding the inclusion of prayer in other public school activities unconstitutional.  See, e.g., Lee v. Weisman, 505 U.S. 577, 599 (1992) (holding prayer at public school graduation unconstitutional); Edwards v. Aguillard, 482 U.S. 578, 585-89 (1987) (holding a statute unconstitutional that would permit the teaching of creationism); Wallace v. Jaffree, 472 U.S. 38, 56-60 (1985) (striking down moment of silence in public school for meditation or voluntary prayer); Sch. Dist. of Abington Township v. Schempp, 374 U.S. 302, 205 (1963) (declaring unconstitutional the reading of the Bible at the start of the public school day).  After more than thirty years since the United States Supreme Court began addressing prayer in public

schools, there is no bright line test to apply to determine the constitutionality of a school's policy or actions.  Rather, three tests have emerged from the relevant case law: the <u>Lemon</u> Test, the Endorsement Test, and the Coercion Test.  <u>See</u> <u>Lemon v. Kurtzman</u>, 403 U.S. 602, 612-13 (1971) (establishing the <u>Lemon</u> Test); <u>County of Allegheny v. ACLU</u>, 492 U.S. 573, 594 (1989) (establishing the Endorsement Test); <u>Lee v. Weisman</u>, 505 U.S. at 612-13 (establishing the Coercion Test).  Because the Supreme Court has provided little guidance, it is unclear which of these tests lower courts should use when faced with cases such as this one.  <u>See</u> <u>Ingebretsen v. Jackson Pub. Sch. Dist.</u>, 88 F.3d 274, 279 (5th Cir. 1996).  However, because the case at bar meets all three of the tests a court could use to determine the constitutionality of the prayer at the WHS graduation ceremony and the requirement that the choir students at WHS sing the prayer at the ceremony, it is clear that there is a strong probability of success on the merits of this case.

A.     *The Inclusion Of The Lord's Prayer And The Requirement That The Choir Students Sing The Prayer At The WHS Graduation Does Not Pass The* <u>*Lemon*</u> *Test.*

Although the <u>Lemon</u> Test is the oldest of the enumerated Supreme Court tests in the arena of school prayer, the Court has made it clear that <u>Lemon</u> is still good law despite the availability of other tests.  <u>See</u> <u>Santa Fe Indep. Sch. Dist v. Doe</u>, 530 U.S. 290, 314 (2000); <u>see also</u> <u>Good News/Good Sports Club v. Sch. Dist. of City of Laude</u>, 28 F.3d 1501, 1508 (8th Cir. 1994) ("Although much maligned, the <u>Lemon</u> test controls this court's analysis of whether governmental activity results in an impermissible establishment of religion."); <u>Scarpino v. Grosshiem</u>, 852 F. Supp. 798, 805 (S.D. Iowa 1994) ("Although the <u>Lemon</u> test has come under attack in the Supreme Court and elsewhere, it is still the law.").

Under the <u>Lemon</u> Test, government practices and policies are constitutional as long as 1) they have a secular purpose, 2) the primary effect neither advances or inhibits religion, and 3) they do not excessively entangle the government with religion.  <u>Lemon</u>, 403 U.S. at 612-13.  If government action violates any one of the three prongs of <u>lemon</u>, it must be struck down as unconstitutional. <u>Stone v. Graham</u>, 449 U.S. 39, 40-41 (1980).  Because the decisions made by the District and the Board in this case regarding prayer at the WHS graduation ceremony fail not only one, but all three prongs of the <u>Lemon</u> Test, it is clear that this policy decision should be deemed constitutionally defective.  <u>See</u> <u>Lemon</u>, 403 U.S. at 612-13.

2.      <u>The Board's Policy On The Lord's Prayer Has No Secular Purpose.</u>

The first prong of the <u>Lemon</u> Test requires examination of the Board's policy of singing the Lord's Prayer at graduation for any religious motivation.  <u>See</u> <u>id.</u>  The presence of religious purposes does not necessarily doom the policy if there is also a secular purpose.  <u>See</u> <u>Lynch v. Donnelly</u>, 465 U.S. 668, 680 (1984); <u>accord</u> <u>Carter v. Broadlawns Med. Ctr.</u>, 857 F.2d 448, 454 (8th Cir. 1988).  It is well established that the Board's secular purpose must be sincere, and not merely seeking to avoid an Establishment Clause violation during litigation.  <u>See, e.g.</u>, <u>Gonzalez v. N. Township of Lake County</u>, 4 F.3d 1412, 1419 (7th Cir. 1993).  From the facts available at this time, it is clear that the Board's decision to include the Lord's Prayer and support the requirement

that choir members sing the Lord's Prayer at the graduation has religious motivation and no sincere secular purpose.

First, prayer is an inherently religious act.  Engel v. Vitale, 370 U.S. 421, 424-25 (1962); see also Graham v. C. Comm. Sch. Dist. of Decatur County, 608 F. Supp. 5331, 535 (S.D. Iowa 1985) (stating there is an "undeniable truth that prayer is inherently religious").  The Lord's Prayer is one of the most well-known and important prayers to followers of the Christian religion.  It should not matter that the Lord's Prayer is not spoken in the case at bar, but sung, because the message and content of the prayer are the same in either form.  Because prayer is so inherently religious, the Board's policy of including the prayer in the ceremony and requiring the choir students to sing it fails the first prong of the Lemon test.  See Lemon, 403 U.S. at 612-13.

The District and the Board may contend that the purpose of including the Lord's Prayer in the graduation ceremony is to solemnize the event of graduation.  However, the Board was not planning on having the Lord's Prayer sung at graduation until complaints ensued from the community members who wished to see the Lord's Prayer included in the ceremony.  When it was brought to the Board's attention that the inclusion of the Lord's Prayer may be unconstitutional, it determined to add a nonreligious song "to balance things out."  If there is an appropriate option of a nonreligious song to solemnize the occasion, the inclusion of the Lord's Prayer along with it certainly demonstrates a religious purpose on behalf of the Board.  In fact, one Board member suggested having the song not because it would solemnize the event, but because the majority of the community members are Christians.  Choosing the Lord's Prayer over and in conjunction with other nonreligious songs for the school-sponsored graduation ceremony is clearly a

violation of the First Amendment as it fails the first prong of the <u>Lemon</u> Test.  <u>See</u> <u>id.</u>
Adapting practices to keep prayer in the school has no secular purpose whatsoever.  <u>See</u>
<u>Ingebretsen</u>, 88 F.3d at 279.

Further, the District and the Board cannot contend that there is an non-religious
educational purpose behind requiring the choir students at WHS to practice and perform
the Lord's Prayer for the graduation ceremony.  Before the Board's decision to include the
Lord' Prayer in the ceremony over objections that it may be unconstitutional, the choir
had not been rehearsing or planning on performing the Lord's Prayer as a song at the
ceremony.  The Lord's Prayer was a prayer before it was song, and this case can be easily
distinguished from any cases allowing music that happens to be religious because of its
complexity and level of difficulty for students to master for competitions.  <u>See</u> <u>Bauchman</u>
<u>v. W. High Sch.</u>, 132 F.3d 542, 554 (10th Cir. 1997) (explaining that there can be secular
purposes behind the performance of some choral music with religious themes).

In <u>Bachman v. West High School</u>, the Tenth Circuit held that there could be a
number of plausible secular purposes behind a high school choral program's choice of
religious music for performance.  <u>Id.</u>  The court stated that "it is recognized that a
significant percentage of serious choral music is based on religious themes or texts."  <u>Id.</u>
(citing <u>Doe v. Duncanville Indep. Sch. Dist.</u>, 70 F.3d 402, 407-08 (5th Cir. 1995)).  The
court explained that it would be expected that a choral music teacher would select
particular pieces of music, whether religious or secular, "for its unique qualities useful to
teach a variety of vocal skills (*i.e.,* sight reading, intonation, harmonization, expression)."
<u>Id.</u>

The case at bar is completely different from <u>Bachman</u>, where the religious music represented only part of an entire repertoire designed to teach a variety of music skills. <u>See</u> <u>id.</u> at 554-55.  The Skarins are not challenging the entire repertoire of choral music performed at WHS, simply the selection of the Lord's Prayer for the graduation ceremony.  The religious significance of the Lord's Prayer cannot be denied, much like the religious significance of the Ten Commandments cannot be denied.  <u>See</u> <u>Stone</u>, 449 U.S. at 39.  The District and the Board could achieve the goal of providing appropriate music for the graduation ceremony without using the Lord's Prayer and infringing on the First Amendment rights of it students and their families.  There are many secular works that may be appropriate for this occasion.

The graduation ceremony is not an educational exercise in the field of music nor is it a choir competition.  It is a graduation ceremony, and the goal is to provide community recognition of shared values and student achievements.  Furthermore, the music teacher obviously did not choose the Lord's Prayer for its "unique qualities useful to teach a variety of vocal skills" because the music teacher had no say in choosing this prayer to be performed as a song.  <u>See</u> <u>Bauchman</u>, 132 F.3d at 554.  The Board chose to include the Lord's Prayer as a song because of protests from community members who wanted their religious beliefs included.  Therefore, the Board cannot argue that the Lord's Prayer was chosen for its musical value and has a secular purpose. There is no plausible secular purpose in including the Lord's Prayer at the graduation in the case at bar.

The Seventh Circuit has also addressed the purpose prong of the <u>Lemon</u> Test in regards to a proposed secular purpose of "beautification."  <u>See</u> <u>Freedom From Religion Found., Inc. v. City of Marshfield</u>, 203 F.3d 487, 493 (7th Cir. 2000).  In <u>Marshfield</u>, the

court held that a religious statute in a city park whose secular purpose was beautification

did not pass the purpose prong of the <u>Lemon</u> Test.  <u>Id.</u>  The court explained that the

secular purpose of beautification could not overcome the obvious religious message

imparted by the statute.  <u>Id.</u>   In the case at bar, the Board cannot argue that inclusion of

the Lord's Prayer as a song serves the secular purpose of providing entertaining and

pleasing music for the graduation ceremony.  Even if providing pleasing music was the

secular purpose of the Board when choosing the Lord's Prayer, it could not overcome the

obvious religious message this prayer conveys.  <u>See id.</u>


2.      <u>The Principal Or Primary Effect Of Including The Lord's Prayer
And Requiring The Choir Students To Perform It In The
Graduation Ceremony Is To Advance Certain Religions And
Inhibit Others.</u>

The second prong of the <u>Lemon</u> Test inquires into whether or not government

policies have the primary effect of either advancing or inhibiting religion.  <u>Lemon</u>, 403

U.S. at 612-13.  Here it does both:  coerced prayer at graduation advanced the

majoritarian Christian religion while stifling the religious views of the Skarins.  The

effect prong of the <u>Lemon</u> Test has a heightened importance in the public school setting

because the age of the students and the position of the school makes the students more

susceptible to religious indoctrination.  Public school activities that contain religious

messages "can have a magnified impact on impressionable young minds," <u>Grand Rapids

Sch. Dist. v. Ball</u>, 473 U.S. 373, 383 (1985).  This is why "prayer exercises in public

schools carry a particular risk of coercion." <u>Lee</u>, 505 U.S. at 592.  Furthermore, "[b]y

placing its imprimatur on the particular kind of belief embodied in any prayer, the state

necessarily offends the sensibilities not only of nonbelievers but of devout believers

among the citizenry who regard the prayer as a necessarily private experience."

Schempp, 374 U.S. at 283 (internal quotations omitted).

The Fourth Circuit has held that prayer at school-sponsored graduations has the primary effect of advancing religion. Hall v. Bradshaw, 630 F.3d 1018, 1021 (4th Cir. 1981) ("A prayer, because it is religious, does advance religion."). The inclusion of the Lord's Prayer in the case at bar not only advances religion over nonreligion, but specifically advances Christianity. "[W]hen a state intentionally sets up a system that by its essential nature serves a religious function, one can only conclude that the advancement of religion is the desired goal." Florey v. Sioux Falls Sch. Dist., 619 F.2d 1311, 1315 (8th Cir. 1980). The Board chose not only to include prayer at graduation, but also specifically decided on the Lord's Prayer because of its perceived religious importance to the district and community. The actions of the Board can only be interpreted as advancing the Christian religion, and thus inclusion of the Lord's Prayer fails the second prong of the Lemon Test. See Lemon, 403 U.S. at 612-13.

　　　　　3.　　The Inclusion Of The Lord's Prayer And The Requirement That The Choir Students Perform It In The Graduation Fosters An Excessive Government Entanglement With Religion.

"In order to determine whether the government entanglement with religion is excessive, we must examine the character and purposes of the institutions that are benefited, the nature of the aid that the state provides, and the resulting relationship between the government and the religious authority." Id. at 615. In the case at bar, the Board is seeking to benefit Christianity by including the prayer in the graduation ceremony. The District and the Board provide the arena, the funding, and the format for

the graduation ceremony at WHS.  When the Board decided to include prayer in school-sponsored graduation, it impermissibly entangled itself with religion.  See id.  The Respondents had to decide what kind of prayer, for how long, what format the prayer would be in, who would lead it, when it would happen in the ceremony and if the students would be required to participate.  All these decisions put the Board in a relationship with religion, and choosing how to implement their policy excessively entangled the Board in religious decision making.  See id.

In Luthens v. Bair, this Court held that there was no excessive entanglement between the state and religion when there was no active monitoring of school programs to determine if there was any tax deductions being allowed for school expenses being used to teach religious tenets and doctrines.  Luthens v. Bair, 788 F. Supp. 1032, 1040-42 (S.D. Iowa 1992).  The case at bar is  easily distinguishable from Luthens under the third prong of Lemon because the Board is actively monitoring and implementing the religious teaching of the Lord's Prayer by including it in the graduation ceremony at WHS.

"The constitution decrees that religion must be a private matter for the individual, the family, and the institutions of private choice, and that while some involvement and entanglement are inevitable, lines must be drawn."  Id. at 625.  The line in the case at bar stops with the Board even considering including religious material in the graduation ceremony.  Once it is decided to include any type of prayer, the Board then must decide what kind of prayer, where to place it in the ceremony, who will speak or sing the prayer, etc.  This leads to excessive entanglement with religion, which is constitutionally forbidden under the Lemon Test.  Id. at 612-13.

      B.     *Inclusion Of The Lord's Prayer And Requiring Choir Students To Perform*
*The Prayer In The Graduation At WHS Does Not Pass The Endorsement*
*Test.*

When the government "'takes a position on questions of religious belief,'" it

unconstitutionally endorses religion.  <u>Allegheny</u>, 492 U.S. at 594 (quoting <u>Lynch v.</u>

<u>Donnelly</u>, 465 U.S. at 687).  The Endorsement Test determines whether the government

intended to or actually would convey a message of endorsement or disapproval of

religion.  <u>See</u> <u>Lynch</u>, 465 U.S. at 690-92.  This test prohibits the government from

promoting or affiliating itself with any religious doctrine or organization, and prohibits

the conveyance of a message that "religion or a particular religious belief is favored or

preferred."  <u>Allegheny</u>, 492 U.S. at 573, 592-93.  Failure to satisfy the purpose

component of this test alone is sufficient to invalidate the action taken by the Board.  <u>See</u>

<u>Edwards</u>, 482 U.S. at 585.

More recently than  <u>County of Allegheny v. ACLU</u>, the Court has thoroughly

analyzed and applied the Endorsement Test in <u>Santa Fe Independent School District v.</u>

<u>Doe</u>.  530 U.S. at 503 (holding the Establishment Clause forbids government speech

endorsing religion).  The Endorsement Test disallows any policy that would involve

"both perceived and actual endorsement of religion."  <u>Id.</u> at 305.

The Court in <u>Santa Fe</u> held that unscripted prayers are impermissible, even when

given by students, if they are presented at school-sponsored events where school officials

are present to stop the prayer.  <u>Id.</u> at 307-08.  The school-sponsored context was

particularly important to the Court's Endorsement analysis.  <u>See id.</u>  The Court held that

prayers are a violation of the First Amendment and are not permitted when they are

"delivered to a large audience assembled as part of a regularly scheduled, school-

sponsored function conducted on school property."  Id.  Prayer such as this bears "the imprint of the state" and cannot be regarded as private speech.  Id. at 305, 302.

In the case at bar, The Board affirmatively decided to include the Lord's Prayer in the form of a song at the WHS graduation ceremony.  Not only is the prayer to be included, but the students enrolled in the choir at WHS are being required to rehearse and perform the Lord's Prayer for the ceremony.  This decision by the Board is even more constitutionally offensive than the policy struck down in Santa Fe, where prayer was permitted, but not required.  See id. at 294.  By deciding to include the Lord's Prayer, the Board endorses the Christian religion.  By allowing the prayer to be sung at the public school graduation, the Board further endorses religion.  By planning and sponsoring the graduation ceremony in which the Lord's Prayer is included the Board again endorses religion.  Requiring the WHS choir students to rehearse and sing the Lord's Prayer is an obvious endorsement of Christianity by the Board.  Every step the Board has taken in the process of including the Lord's Prayer in the graduation ceremony endorses religion.

The Board's policy in this case also includes the instruction in singing the Lord's Prayer as part of required class rehearsals and performances for members enrolled in choir by a classroom teacher.  Allowing teachers to use school funding and class time to teach the Lord's Prayer encourages students to view the instruction in religion as "an officially endorsed extension of the regular school day."  Quappe v. Endry, 772 F. Supp. 1004, 1014 (S.D. Ohio 1991).  Requiring the Skarins to rehearse and perform the Lord's Prayer in a for-credit public school class conveys a message to them that the school supports teaching Christianity.  This is an impermissible endorsement of religion by the Board under the Establishment Clause.

As Justice Souter noted, truly private prayer neither seeks nor requires a microphone and an audience.  Lee, 505 U.S. at 630-31 (Souter, J., concurring).  Because students "have no need for the machinery of the state to affirm their beliefs, the government's sponsorship of prayer . . . is most reasonably understood as an official endorsement of religion."  Id. (Souter, J., concurring).  The prayer in this case cannot survive the Endorsement Test because the Lord's Prayer at the WHS graduation ceremony is sponsored by the school and its officials.  Thus, the District's and Board's decision regarding the inclusion of the Lord's Prayer at the WHS graduation ceremony is constitutionally infirm.  See Santa Fe, 530 U.S. at 307-08.

C.      *Inclusion Of The Lord's Prayer And Requiring Choir Students To Perform The Prayer In The Graduation At WHS Does Not Pass The Coercion Test.*

In Lee v. Weisman, the Court enunciated the Coercion Test, which held that a school policy would be unconstitutional if it coerced students to participate in a religious exercise.  Lee, 505 U.S. at 599.  The Lee decision is directly on point with the case at bar, because it involved prayer being conducted at a public high school graduation ceremony. Id. at 580.  In Lee, the Court found the inclusion of prayer at a school-sponsored graduation ceremony unconstitutional under the First and Fourteenth Amendments.  Id. at 599.  Lee made the Court's position on prayer at school-sponsored graduation ceremonies crystal clear in its last paragraph:

> The sole question presented is whether a religious exercise may be conducted at a graduation ceremony in circumstances where, as we have found, young graduates who object are induced to conform.  No holding by this Court suggests that a school can persuade or compel a student to participate in a religious exercise.  That is being done here, and it is forbidden by the Establishment Clause of the First Amendment.

<u>Id.</u>  <u>Lee</u> forbids graduation prayer sponsored by the school because it places students and their parents, friends, and fellow community members under public and governmentally orchestrated peer pressure to conform to the speaker's religion.  <u>See id.</u> at 593.  "It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a state religion or religious faith, or tends to do so.'"  <u>Id.</u> at 587 (quoting <u>Lynch</u>, 465 U.S. at 678).

The Board in the case at bar is requiring that Petitioners Donovan and Ruby Skarin participate in singing the Lord's Prayer both during the choir rehearsals and as part of the graduation ceremony to be held on May 19, 2002.  This clearly violates the Coercion Test the Court used in <u>Lee</u> which has more recently been discussed and applied in <u>Santa Fe</u>, along with the Endorsement Test.  <u>See id.</u> at 599; <u>see also</u> <u>Santa Fe</u>, 530 U.S. at 302.  Requiring the Skarins to participate in the singing of the Lord's Prayer coerces them into supporting the Christian religion the school has endorsed for the graduation ceremony.   The District and Board have unconstitutionally established Christianity as the school religion, and are unconstitutionally forcing the students to participate in this religious choice by requiring them to sing the Lord's Prayer at the graduation ceremony and in the rehearsals prior to the ceremony.

Less egregious, but equally as unconstitutional, is the District's and Board's decision to have prayer at the graduation ceremony at all.  The inclusion of the Lord's Prayer as a song in the ceremony also coerces the students, parents, family members, friends, and all in attendance at the graduation to support and participate in the Christian religion.  This was exactly what <u>Lee</u> held to be unconstitutional.  <u>See Lee</u>, 505 U.S. at 599.

Since <u>Lee</u>, the Court has reaffirmed that even subtle coercive pressure to participate in prayer is as unconstitutional as a direct command to pray.  <u>See</u> <u>Santa Fe</u>, 530 U.S. at 312.

Furthermore, the Court in <u>Lee</u> emphasized that graduation ceremonies were unique because although attendance is not mandatory, most students and guests will not feel as though they can miss this important day.  <u>Lee</u>, 505 U.S. at 585.  "Even for those students who object to the religious exercise, their attendance and participation in the state-sponsored religious activity are in a fair and real sense obligatory, though the school district does not require attendance as a condition for receipt of the diploma."  <u>Id.</u>  "The Constitution forbids the State to exact religious conformity from a student as the price of attending her own graduation."  <u>Id.</u> at 596.

The Board in this case has affirmatively decided that the Lord's Prayer will be included in the graduation ceremony on May 19, 2002 in the form of a song sung by the student choir.  Not only will the graduates and audience members be subjected to this coercive religious inclusion in the ceremony this year and in future years, the choir students, including Donovan and Ruby Skarin, will be further coerced by the requirement that they rehearse and perform the Lord's Prayer as part of their for-credit choir membership.  The decision by the District and the Board clearly coerces students and others to participate in school-sponsored prayer, and thus does not pass the Coercion Test and should be deemed unconstitutional.  <u>See id.</u> at 599.

The Board cannot overcome the unconstitutionality of its decision to include the Lord's Prayer on the basis that a majority of community members allegedly want the prayer to be included.  The Court in <u>Lee</u> specifically rejected this argument, holding that the values protected  by the First Amendment are not subject to majority vote.  <u>Id.</u> at 596;

see also id. at 593 (stating that prayers may not be placed in graduation ceremonies even

if many of the students favor them).  As Judge Vietor so clearly stated for this court in

Graham v. Central  Community School District of Decatur County:

> It may well be that the majority of graduating seniors and the majority of
> the population in the defendant school district would like to have an
> invocation and benediction as part of the commencement exercises.
> However, the enforcement of constitutional rights is not subject to the
> pleasure of the majority.  It would be the antithesis of the concept of
> constitutional law to apply the protection of the Constitution, which is the
> fundamental law of our land, in any given situation only if the majority at
> the relevant time and place approved.  The Constitution protects all of us,
> including those who are in the minority.

Graham, 608 F. Supp. at 537.

The Court in Lee also rejected any contention that the proscribing of prayer at

school graduation ceremonies would infringe on the First Amendment Free Exercise and

Free Speech rights of speakers.  Lee, 505 U.S. at 592.  The Court stated, "[w]hat to most

believers may seem like nothing more than a reasonable request that the nonbeliever

respect their religious practices may appear to the nonbeliever or dissenter to be an

attempt to employ the machinery of the State to enforce a religious orthodoxy."  Id.  In

the case at bar, the District and Board cannot raise Free Exercise and Free Speech as a

defense because the speakers in this case are the members of the WHS choir class, who

are instructed by a District-employed teacher and required to participate in the prayer.

> D.   *Inclusion Of The Lord's Prayer And Requiring Choir Students To Perform
> The Prayer In The Graduation At WHS Violates The Iowa Constitution.*

Article I, § 3 of the Iowa Constitution states:

> The General Assembly shall make no law respecting an establishment of
> religion, or prohibiting the free exercise thereof; nor shall any person be
> compelled to attend any place of worship, pay tithes, taxes, or other rates
> for building or repairing places of worship, or the maintenance of any
> minister, or ministry.

Iowa Const. Art. I, §3.  Iowa State courts have recognized that § 3 of Article I derives from the First Amendment to the United States Constitution, and has favorably cited much of the Supreme Court jurisprudence regarding the First Amendment when interpreting § 3 of article I of the Iowa Constitution.  See, e.g., Rudd v. Ray, 248 N.W.2d 125 (Iowa 1976) (discussing United States Supreme Court cases on establishment of religion and applying the Lemon test).  Therefore, because the inclusion of the Lord's Prayer at the WHS graduation ceremony does not pass the Lemon, Endorsement, or Coercion Tests as discussed above, it also would be unconstitutional under article I, § 3 of the Iowa Constitution.

**III.      Petitioners Will Suffer Irreparable Injury If The Injunction Is Not Granted.**

The decisions of the District and the Board in the case at bar to have the Lord's Prayer at the 2002 graduation ceremony substantially threatens the Petitioners' First Amendment rights.  Even loss of First Amendment rights for a minimal amount of time constitutes an irreparable injury.  Elrod v. Burns, 427 U.S. 347, 373 (1976).  Graduation is a once-in-a-lifetime event, and thus injunctive relief is particularly appropriate.  Lee, 505 U.S. at 577.  Courts routinely enjoin school-sponsored prayer to protect the First Amendment rights of the students, and in this case, the parents.  See, e.g., Santa Fe, 530 U.S. at 317 (enjoining a school from allowing prayer at a high school football game).

**IV.     There Will Be Minimal Injury To The Respondents If The Injunction Is Granted.**

Respondents may contend that certain students, parents, and community members will be disappointed by the issuance of an injunction and be discouraged from attending the ceremony because they would like a prayer to be included in the ceremony in order to include and advance their individual religious beliefs.  However, the Respondents are not harmed by the elimination of an official prayer which they have no constitutional right to impose, nor do the supposed sensibilities of third parties excuse their compliance with the minimal requirements of the state and federal constitutions.

Furthermore, the solemnization of the graduation event can obviously be accomplished by a choral performance of a song which does not have religious meaning or connotations, as is exemplified by the Board's own decision to include a secular song as well as the Lord's Prayer.  If the purpose of the Board is also to provide appropriate music for the graduation ceremony, they can achieve this objective without resorting to unconstitutional prayer.  There is more than three weeks until the ceremony takes place, and the Board certainly has the time to replace or eliminate the singing of the Lord's Prayer without any injury to them.

**V.      The Public Interest Is Best Served By Granting This Preliminary Injunction.**

The issuance of an injunction by this Court to prohibit the District and the Board from implementing the Lord's Prayer and forcing the choir students to perform the prayer at the 2002 graduation ceremony will in no way inhibit or limit individual rights to free exercise of religion or free speech.  Students will continue to have the same rights to pray as they have always had.  Silent prayer and prayer in a non-disruptive manner by

individuals and student-led groups has always been allowed.  See Bd. of Educ. of

Westside Comm. Schs. v. Mergens, 496 U.S. 226, 240 (1990); Wallace v. Jaffree, 472

U.S. at 67.  "The First Amendment right of the people to free exercise of religion does

not give them a right to have government provide them public prayer at government

functions and ceremonies, even if the majority would like it."  Graham, 608 F. Supp. at

537.

More importantly, the public interest cannot be disserved by an injunction against

an unconstitutional policy.  See Ingebretsen, 88 F.3d at 280.  The public interest in

protecting the religious liberties of students subjected to coercive religious practices in

the public schools is best served by the issuance of an injunction against the Respondents.

**VI.    Conclusion**

The case at bar clearly warrants the issuance of a temporary restraining order

and/or preliminary injunction against the Respondents to ensure the protection of the First

Amendment rights of the Petitioners and other citizens in the Woodbine High School

Community District.  The balance of the equities is in favor of the injunction because

there will be no harm to the Respondents if the injunction is granted and significant harm

to the Petitioners if the injunction is not granted.  Further, there is a strong probability

that the Petitioners will be successful on the merits of this case because decades of law

proscribe the endorsement of religion in public schools and compulsion, either direct or

subtle, to participate in a religious practice.  The public interest will not be disserved by

an injunction against the Respondents forbidding them to include the Lord's Prayer in the

May 19, 2002 graduation ceremony at WHS until this Court can determine the final

outcome of this case.  For these reasons, the Petitioners' motion for a temporary

restraining order and/or injunctive relief under Rule 65 should be granted.


Respectfully Submitted,


BY:   _____

Anne Olson, Student Attorney
Drake Legal Clinic


_____
Randall C. Wilson      PK7857
Iowa Civil Liberties Union Foundation
505 5th Street, Suite 901
Des Moines, Iowa 50309
(515) 243-4032

Sally Frank, Supervising Attorney  PK 1100823
Drake Legal Clinic
2400 University Avenue
Des Moines, Iowa 50311
(515) 271-3851

ATTORNEYS FOR PETITIONERS

CERTIFICATE OF SERVICE & FILING

I certify that on April 22, 2002, I served each of the parties to this action in compliance with Fed. R. Civ. Pro. 5  by depositing true copies of this document in the United States Mail, first class postage prepaid, addressed to each of the parties or their attorneys of record as shown.  Contemporaneous therewith an original and one copy  were forwarded to the Clerk of this Court for filing:


_____

Copy Mailed to: Brian L. Yung, Esq.
Rene C. LaPierre, Esq.
PHILLIPS, ORZECHOWSKI, CLAUSEN & LAPIERRE, LLP.
Jackson Plaza, Suit 300;   627  Fourth St.
Sioux City, IA  51102

23